James Michael McCONNELL, Appellee,

v.

Elmer ANDERSON et al., Appellants.

No. 20583.

United States Court of Appeals,
Eighth Circuit.

Oct. 18, 1971.

R. Joel Tierney, University Atty., Minneapolis, Minn., Richard A. Moore, A. Patrick Leighton, Moore, Costello & Hart, Saint Paul, Minn., for appellants.

Stephen M. Goldfarb, John R. Goetz, Reinhold F. Hollender, Minneapolis, Minn., for appellee; Lynn S. Castner, Minnesota Civil Liberties Union, Minneapolis, Minn., for counsel.

Before MEHAFFY, ROSS and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

This case has its origin in a July 9, 1970 resolution of the University of Minnesota Board of Regents not to approve the application of James Michael McConnell to head, at the rank of Instructor, the cataloging division of the University's St. Paul campus library on the ground that his "personal conduct, as represented in the public and University news media, is not consistent with the best interest of the University." McConnell's complaint alleged that he was offered the division head appointment in April 1970; that he accepted the offer in May 1970, but that the offer was withdrawn,[1] pursuant to the foregoing resolution, after he and another male publicly applied for a marriage license at the Hennepin County, Minnesota Clerk's office.

On July 22, 1970, McConnell brought suit for injunctive relief in the United States District Court for the District of Minnesota, naming as defendants the individual members of the Board of Regents and Ralph H. Hopp, the University Librarian. In addition to the allegations above, his complaint asserted that he was a homosexual and that the Board's resolution not to approve his employment application was premised on the fact of his homosexuality and upon his desire, as exemplified by the marriage license incident, specifically to publicly profess his "earnest" belief that homosexuals are entitled to privileges equal to those afforded heterosexuals. In further detail he alleged that the Board, acting under color of the statutes, regulations, customs and usages of the State of Minnesota, subjected him to arbitrary, unreasonable and discriminatory action working a deprivation of his Fourteenth Amendment rights to equal protection of the laws and due process of law. Federal jurisdiction was claimed, *inter alia,* under 42 U.S.C.A. § 1983 and 28 U.S.C.A. § 1343(3).[2] Judge Neville, after conducting an oral hearing at which evidence was taken, entered judgment for McConnell and enjoined the Board from refusing to employ him "solely because, and on the grounds that he is a homosexual and that thereby 'his personal conduct, as presented in the public and University news media, is not consistent with the best interest of the University.'" 316 F.Supp. 809 (D.Minn. 1970). Judge Neville stayed the judgment and suspended the injunction pending disposition of this appeal. We must reverse.[3]

Much of the factual background is set forth in Judge Neville's published memorandum opinion and need not be repeated at any length here. It suffices merely to stress, by way of summary, that McConnell apparently is well-educated and otherwise able, possessing both an academic degree and a master's degree; that he formerly was employed as Acquisitions Librarian at Park College in Missouri; that he is a member of the organization known as FREE (Fight Re-

1. McConnell acknowledges that no contract of employment was ever finalized since the Board of Regents refused to approve his application.

2. McConnell also asserted federal court jurisdiction under 28 U.S.C.A. § 1331 and 42 U.S.C.A. § 1985 and 28 U.S.C.A. § 1343(4). We are satisfied that federal jurisdiction properly was invoked under § 1983 and § 1343(3).

3. The facts are essentially undisputed, and the issue is whether, as a matter of law, the Board's action transcends constitutional limits. We therefore are not confined by the "clearly erroneous" standard of Fed.Rules Civ.Proc. Rule 52(a), 28 U.S.C.A. United States v. General Motors Corp., 384 U.S. 127, 141–142, n. 16, 86 S.Ct. 1321, 16 L.Ed.2d 415 (1966). See also Sun Insurance Office v. Be-Mac Transport Co., 132 F.2d 535, 536 (CA 8 1942) and Glassman Construction Company v. United States, 421 F.2d 212, 214 (CA 4 1970), and cases there cited.

pression of Erotic Expression); that on May 18, 1970, McConnell and a friend referred to in the record as "Jack Baker" encountered Dr. Hopp and informed him of their intention to obtain a license to marry; that during this conversation Dr. Hopp expressed concern that such an occurrence might well jeopardize favorable consideration of McConnell's employment application; that about three hours later on the same day, McConnell and Jack Baker appeared at the Hennepin County Clerk's office and made formal application for the license; that this event received the attention of the local news and television media; [4] that the Board's Faculty, Staff and Student Affairs Committee, on June 24, 1970, convened to initially consider the matter of McConnell's proposed appointment and voted that it be not approved; that McConnell promptly was so advised and given notice that he could request a hearing at the Committee's next scheduled meeting on July 9; that McConnell requested a hearing; that he and his counsel appeared at the meeting and were furnished copies of the resolution in its proposed form; that McConnell and his counsel took advantage of this opportunity to present information they deemed supportive of his application, and that at the conclusion of the presentation on McConnell's behalf, the Committee adopted the resolution. It perhaps is well at this point to note that McConnell makes no claim that the Board denied him procedural due process.

The Board's primary demand for reversal is based upon a most fundamental contention. It is the Board's claim that Judge Neville, in issuing the injunction, exceeded his proper function and authority by superimposing his own situational judgment upon legitimate Board action supported by substantial and material factual data. The Board also mounts a due process attack against the timeliness and sufficiency of service of process. It urges, too, that Judge Neville improperly prevented it from cross-examining McConnell at the oral hearing with reference to the nature of his past conduct.

■ We focus our initial attention upon our standard of review of the Board's action. The Minnesota Supreme Court has had no less than five occasions to determine and review the proper role and function of the Board of Regents in the management, control and administration of the University of Minnesota.[5] From these decisions we think it can be said generally that, insofar as Minnesota's highest court is concerned, the Board is vested with plenary and exclusive authority to govern, control and oversee the administration of the University and that the role of Minnesota courts in reviewing Board action is limited to determining whether the Board has kept within the scope of its constitutional powers. We think this is but another manner of saying that, at least with respect to matters purely administrative in nature, viz., the employment of University personnel and the like, the discretion of the Board necessarily is broad and subject only to such judicial review as normally is available to litigants allegedly aggrieved by administrative action generally. We think the attitude and approach to the Board's role by

---

4. From the Appendix it is revealed that this antic generated at least four news articles in the local press: Bergerson, *Prospective Newlyweds Really in a Gay Mood*, St. Paul Pioneer Press, May 19, 1970; *Homosexual Marriage License Denial Urged*, The Minneapolis Star, May 23, 1970; *'Gay' Marriage Refusal Fought*, St. Paul Pioneer Press, May 27, 1970, and Coleman, *Two Homosexuals Plan to Wed*, Minnesota Daily, May 19, 1970. McConnell specifically denied arranging for the presence of the press at this event.

5. Bailey v. University of Minnesota, Minn., 187 N.W.2d 702, 704 (1971); State ex rel. Sholes v. University of Minnesota, Minn., 54 N.W.2d 122, 126 (1952); Fanning v. University of Minnesota, 183 Minn. 222, 236 N.W. 217, 218–219 (1931); State ex rel. University of Minnesota v. Chase, 172 Minn. 259, 220 N.W. 951, 952–953 (1928), and Gleason v. University of Minnesota, 104 Minn. 359, 116 N.W. 650, 651–652 (1908).

Minnesota's court is sound and instructive and we adopt it as our own.

Without question, then, the Board is on relevant and sound ground in asserting that the decision embodied in its resolution cannot be overturned in the absence of a clear and affirmative showing that it was premised upon arbitrary or capricious conduct. That a court is, in reviewing a determination of an administrative body, limited to deciding whether the administrative action was arbitrary, unreasonable or capricious long has been settled.[6] This particularly must be so, it seems to us, where, as here, the determination under challenge is one falling within the considerable discretion entrusted those charged with the heavy responsibility of supervising the administration of this nation's colleges and universities.

It is McConnell's position that the Board's decision not to approve his employment application reflects "a clear example of the unreasoning prejudice and revulsion some people feel when confronted by a homosexual." That being so, he argues that the Board's action was arbitrary and capricious and thus violative of his constitutional rights. We do not agree.

■ It is our conclusion that the Board possessed ample specific factual information on the basis of which it reasonably could conclude that the appointment would not be consistent with the best interests of the University. We need only to observe that the Board was given the unenviable task and duty of passing upon and judging McConnell's application against the background of his actual conduct. So postured, it is at once apparent that this is not a case involving mere homosexual propensities on the part of a prospective employee. Neither is it a case in which an applicant is excluded from employment because of a desire clandestinely to pursue homosexual conduct. It is, instead, a case in which something more than remunerative employment is sought; a case in which the applicant seeks employment on his own terms; a case in which the prospective employee demands, as shown both by the allegations of the complaint and by the marriage license incident as well, the right to pursue an activist role in implementing his unconventional ideas concerning the societal status to be accorded homosexuals and, thereby, to foist tacit approval of this socially repugnant concept upon his employer, who is, in this instance, an institution of higher learning.[7] We know of no constitutional fiat or binding principle of decisional law which requires an employer to accede to such extravagant demands.[8] We are therefore unable fairly to categorize the Board's action here as arbitrary, unreasonable or capricious.

■■ We turn briefly to the Board's claim that timely service of process had not been effected on its individual members at the time of the District Court hearing on the motion for preliminary injunctive relief. We regard this contention as legally frivolous. The chal-

6. See generally, Grace Line Inc. v. Federal Maritime Board, 263 F.2d 709, 711 (CA 2 1959), and cases there cited, and, *semble*, Konigsberg v. State Bar, 353 U.S. 252, 262, 77 S.Ct. 722, 1 L.Ed.2d 810 (1957). See also Clarke v. Redeker, 259 F.Supp. 117, 124 (Three-judge court, S.D.Iowa 1966).

7. Compare Pickering v. Board of Education, 391 U.S. 563, 568–575, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). In the District Court McConnell apparently argued that he has the right to apply for a marriage license and that such is "symbolic speech" within the protection of the Free Speech and Due Process clauses of the First and Fourteenth Amendments.

See McConnell v. Anderson, p. 815 of 316 F.Supp. He relies largely on Tinker v. Des Moines Ind. School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), a case from this circuit. Although this contention is not pressed here, we feel constrained to observe that we do not believe that *Tinker*, when read in light of its distinctive facts, can afford McConnell any comfort in this regard.

8. *Cf.* Pickering v. Board of Education, *supra*, pp. 574–575 of 391 U.S., 88 S.Ct. 1731; Slochower v. Board of Higher Education, 350 U.S. 551, 557–559, 76 S.Ct. 637, 100 L.Ed. 692 (1950), and Wieman v. Updegraff, 344 U.S. 183, 190–192, 73 S.Ct. 215, 97 L.Ed. 216 (1952).

lenge was first raised during the hearing but pursued no further. In this posture, we feel that we would be justified in holding that the claim was waived. In any event, the crucial question in this regard is whether, on the facts present here, the Board received notice sufficient to afford it the opportunity to appear and to be heard.[9] We hold that it received such notice.

Finally, without citing us to any decisional authority, the Board complains that Judge Neville improperly limited its right to cross-examine McConnell relative to his past conduct. We deem it unnecessary to consider this claim in light of our disposition of the Board's principal contention.

Reversed, with directions to dissolve the injunction and to dismiss the action on the merits.

---

9. See generally, Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940).