**Rebecca S. HOLLENBAUGH and Fred K. Philburn, Plaintiffs,**

v.

**CARNEGIE FREE LIBRARY et al., Defendants.**

Civ. A. No. 74–827.

United States District Court, W. D. Pennsylvania.

Sept. 15, 1977.

Mary Warman Terry, Warman & Warman, Uniontown, Pa., for plaintiffs.

William H. Soisson, III, Connellsville, Pa., Ernest P. DeHaas, III, Coldren & Coldren, Uniontown, Pa., for defendants.

## MEMORANDUM AND ORDER

TEITELBAUM, District Judge.

This is a civil rights action brought against the Board of Trustees of Carnegie

Free Library of Connellsville[1] seeking declaratory and injunctive relief and monetary damages to redress an alleged deprivation of right and privileges guaranteed by the First, Fourth, Ninth and Fourteenth amendments and 42 U.S.C. § 1983. Jurisdiction is based on 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3), (4).

On December 2, 1975, the Court granted defendants' motion for summary judgment on the jurisdictional ground of an absence of state action. An appeal followed and, on November 22, 1976, the U.S. Court of Appeals for the Third Circuit reversed the judgment of the district court and remanded for further proceedings,[2] on March 15, 1977, a non-jury trial was then held in the above matter. The following shall constitute the findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

■ The plaintiffs, Rebecca S. Hollenbaugh and Fred K. Philburn, were employees of Carnegie Free Library until they were discharged on August 9, 1973. Plaintiff Hollenbaugh was hired as a librarian in December of 1969 and served in that capacity until her dismissal by the Board of Trustees, while plaintiff Philburn was hired in February of 1971 as a janitor. Both plaintiffs were at will employees, the only contractual limitation on their employment being Ms. Hollenbaugh's agreement with the Board of Trustees of the Library that either party could terminate her employment with 60-days' notice.[3] The plaintiffs were competent employees who had had no significant problems with their employers until the circumstances that gave rise to their

1. Plaintiffs had originally joined Carnegie Free Library as a defendant. By Order dated December 4, 1974, the Court dismissed Carnegie Free Library as a defendant since it is not a person as required under 42 U.S.C. § 1983.

2. *Hollenbaugh v. Carnegie Free Library, etc.*, 545 F.2d 382 (3d Cir. 1976). Both plaintiffs and defendants have extensively briefed the issue of state action. There is no question, however, that the Court of Appeals decided that issue as

it concluded "that the district court erred in finding no state action." *Hollenbaugh v. Carnegie Free Library, etc., supra* at 384.

3. This condition was met by the defendants as Ms. Hollenbaugh was given 60 days notice of her termination and was paid 60 days wages from September 1, 1973, the effective date of the notice of termination.

discharges occurred.[4] Sometime during their mutual employment at the library, plaintiffs met and began seeing each other socially. Plaintiff Philburn was married at this time and remained so through the time of trial, while Ms. Hollenbaugh was divorced by the time she met Mr. Philburn.[5] In November of 1972, Ms. Hollenbaugh became pregnant with Philburn's child. She thereafter sought a leave of absence on account of her pregnancy from the Board of Trustees. That request was granted, even though the Board knew that Mr. Philburn, a married man, was the father. In December of 1972, on account of Ms. Hollenbaugh's pregnancy, Philburn left his wife and moved in with Ms. Hollenbaugh. He has continued to live with her through the time of trial and both plaintiffs have expressed their intention to continue to live together in the future. The plaintiffs' living arrangement is neither secret nor clandestine. By their own testimony, they concede that the community of Connellsville is well aware of it and that there has been some comment concerning it. The Board of Trustees, reacting to what they testified were complaints from members of the community, attempted to dissuade plaintiffs from continuing to live together, however, the plaintiffs refused.

Plaintiffs contend that a factor, if not the motivating factor for their discharges, was that they had become parents of an illegitimate child. However, a review of the testimony and exhibits presented at trial suggests that the sole reason for their discharges was that they were living together in "open adultery." The Court reaches this factual conclusion for a number of reasons. First, all of the Board members who testified stated that the fact that Ms. Hollenbaugh had an illegitimate child was not a factor in the discharge. Secondly, if the reason for the discharge was that Ms. Hollenbaugh had an illegitimate child, the Board probably would have refused Ms. Hollenbaugh's request for a leave of absence when she became pregnant with Philburn's child. Thirdly, no pressure was placed on plaintiffs to stop their relationship until Philburn moved in with Ms. Hollenbaugh. Finally, both plaintiffs testified that in conversations with various members of the Board, there were indications that if they "normalized" their relationship through marriage or if Philburn moved out, the Board would consider letting them keep their jobs. Therefore, although it is clear that the pregnancy of Ms. Hollenbaugh precipitated Mr. Philburn's moving in with her, neither that pregnancy nor the subsequent birth of the illegitimate child was the cause of their discharges.

As a result of plaintiffs' refusal to alter their living arrangements, the board held a special meeting on August 9, 1973 at which time they voted to terminate plaintiffs' employment. This dismissal gave rise to this lawsuit, the plaintiffs contending that their discharge violated various constitutional rights including *inter alia*: The equal protection clause and the constitutional right to privacy.[6]

---

4. Defendants have alleged that plaintiff Philburn's discharge was due in part to unsatisfactory performance of his duties; however, the evidence is to the contrary and it is clear that the motivating factor for his discharge was his living arrangement with Ms. Hollenbaugh.

5. The defendants have described plaintiffs' relationship as an "open and adulterous" one. Since Mr. Philburn is a married man, he is committing adultery. However, Ms. Hollenbaugh was divorced by the time the relationship began and therefore is technically not committing adultery. See *Karchner v. Mumie*, 398 Pa. 13, 156 A.2d 537 (1960). With that distinction in mind, the Court may from time to time describe plaintiffs' relationship and living arrangement as "open and adulterous."

6. Plaintiffs raise two other issues, neither of which merit relief from their discharges. Plaintiff Philburn asserts that the facts and circumstances surrounding his original employment amount to an implied contract of continued employment. This contractual right, he contends, is a property right which cannot be deprived without first meeting the due process requirements of notice and opportunity to be heard. See, *e. g., Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

In support of the existence of this implied contract, Philburn says that he took the job with the library even though he lost certain pension benefits as a result. The Court believes, however, that the evidence produced in this case

CONCLUSIONS OF LAW

I. The Equal Protection Clause Claim

As noted above, the motivating factor behind the discharges of plaintiffs was that they were living together in a state of "open adultery." The defendants would have condoned plaintiffs' extra-marital "affair" and apparently would also have condoned the child's birth out of wedlock. Only the fact that plaintiffs chose to live together caused their discharges. The plaintiffs contend that .there is no rational connection between their conduct and their fitness to perform their jobs; therefore, their discharges must be held to constitute a violation of the equal protection clause.

At the outset, the Court believes that it is appropriate for it to define what it perceives its role to be in a case of this nature. It is not the Court's function to impose its views of morality on the defendant Board of Trustees. Accordingly, I will not express any opinion as to the "rightness" or "wrongness" of plaintiffs' living arrangement. Our role is to determine only if the discharges of the plaintiffs violated the law. The plaintiffs were employees at will; therefore, unless their discharges were in violation of any of their constitutionally-protected rights, the Court will not intervene and overturn the decision of the defendants' to dismiss them from their jobs.

Under traditional equal protection analysis, a legislative classification must be sustained if the classification itself is rationally related to a legitimate governmental interest. See *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *U. S. Dept. of Agriculture v. Moreno*, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973). The defendants have propounded three reasons for the discharges, all of which revolve around their opposition to plaintiffs' living in a state of "open adultery." First, they contend that this living arrangement affects the ability of plaintiff Hollenbaugh to perform her functions as a librarian; secondly, they contend that retention of plaintiffs in their jobs adversely affects the library's ability to perform its function in the community; and, thirdly, they point out that plaintiffs have stated their intention to continue living together.

Plaintiffs contend that these reasons are not "rationally related" to any legitimate governmental interest and, in support thereof, direct the Court's attention to two cases which they argue are dispositive of the issue in their favor. In the first case, *Andrews v. Drew Municipal Separate School District*, 507 F.2d 611 (5th Cir. 1975), the Court held that a school board policy of firing unwed mothers is irrebuttably presumed to violate the equal protection clause. The effect of the school board's policy was that all unwed mothers were presumed to be unfit to teach. The basis of the Court's holding was that such a policy, by not weighing the circumstances of the individual case, was fraught with invidious discrimination. As the court stated: "The law is clear that due process interdicts the adoption by a state of an irrebuttable presumption, as to which the presumed fact does not necessarily follow the proven fact." *Andrews .v. Drew Municipal Separate School District, supra* at 614.

The instant case is distinguishable from *Andrews*, as there is no evidence that the defendants had formulated any sort of uniform policy against the conduct the plaintiffs were engaged in or that they failed to assess the particularities of plaintiffs' case. Ms. Hollenbaugh was a librarian whose duties involved direct and frequent contacts with the community. She testified that she tried to spend a great deal

---

does not indicate the existence of any promise, implied or otherwise, of continued employment. Philburn himself testified that he had no special understanding that his job would continue indefinitely.

He is strictly an at-will employee, and, as such, could have his employment terminated without a pretermination hearing. *Board of Regents v. Roth, supra.* Both plaintiffs also contend generally that their discharges without a pretermination hearing constituted a violation of the due process clause of the Fourteenth Amendment. On the basis of *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), this contention is similarly deemed to be without merit.

of her time out of her office and on the floor of the library and that the majority of people she dealt with were children. Further, the community was well aware of plaintiffs' living arrangement and, as the Board members testified, they had a number of complaints from persons in the Connellsville community concerning that arrangement. *McConnell v. Anderson,* 451 F.2d 193 (8th Cir. 1971), the second case cited by plaintiffs, follows a line of reasoning similar to *Andrews.* In *McConnell,* the court held that a university Board of Regents' decision to refuse to hire the plaintiff, a homosexual, was not "arbitrary, unreasonable, or capricious;" accordingly, plaintiffs' request that the university's decision be enjoined was denied. The court's decision was not based purely on the fact that plaintiff was a homosexual, but rather that plaintiff had publicized his homosexuality and his views on equal rights for homosexuals through the media following his application for employment. The court concluded that the Board of Regents could reasonably have decided that to hire the plaintiff would be giving "tacit approval" to his conduct. *McConnell v. Anderson, supra* at 196. Although plaintiffs in the instant case have not attempted to force their life style on the community of Connellsville, the community is well aware of their living arrangement. Like the Board of Regents in *McConnell,* therefore, the defendants could reasonably conclude that by retaining plaintiffs as employees they would be giving "tacit approval" to their conduct. The defendants, as members of the Board of Trustees, are charged with representing what they perceive to be the library's best interests in the community. As employees of a library in a relatively small community, plaintiffs were frequently called on to deal directly with that community. Under these circumstances, any rights plaintiffs have to live together must be balanced against the state's interest—as represented by the li-

brary and its Board of Trustees in the instant case—in being able to properly perform its function in the community.[7] It is possible, for example, that if plaintiffs were merely students at a state university, expulsion by that university based on their living arrangement *would* be an irrational classification violative of the equal protection clause. However, where plaintiffs are employed in a library and have direct contact with the community on a regular basis, the Court is not willing to call the Board's decision to dismiss an arbitrary, unreasonable, or capricious one. Accordingly, we conclude that the defendants' decision to discharge plaintiffs does not violate the equal protection clause.

II.  Constitutional Rights of Privacy

Plaintiffs' next contention is that the action of the defendants in discharging them because they were living together in "open adultery," constituted an unwarranted intrusion into a matter fundamentally affecting plaintiffs' personal lives, and was, therefore, in violation of the constitutionally-guaranteed right of privacy under the First, Fourth, Ninth and Fourteenth Amendments of the Constitution. See *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). Although this right of privacy has been extended to several areas that have traditionally been categorized as "immoral,"[8] these decisions make it clear that "only personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty' are included in this guarantee of personal privacy." *Roe v. Wade, supra* 410 U.S. at 152, 93 S.Ct. at 726. A review of the case law indicates that this right encompasses and protects the personal intimacies of the home, the family, motherhood, procreation and child rearing. See *Paris Adult Theatre I v. Slaton,* 413 U.S. 49,

---

7.  *Cf. Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

8.  See *e. g., Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) (an unmarried woman may not be denied access to con-

traceptives); and *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (a woman's right to an abortion—based on her constitutional right of privacy—extended to both married and single women).

66, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). Nothing, however, in these decisions concerning the right of privacy, intimates that there is any "fundamental" privacy right "implicit in the concept of ordered liberty" for two persons, one of whom is married, to live together under the circumstances of this case. We conclude, therefore, that plaintiffs' discharges were not violative of their constitutional right of privacy.

### ORDER

AND NOW, to-wit, this 15th day of September, 1977, in accordance with the above findings of fact and conclusions of law, IT IS ORDERED and DECREED that judgment be entered for the defendants and that plaintiffs' cause of action be dismissed.