**Thomas J. MASINO**

v.

**The UNITED STATES.**

**No. 270–77.**

United States Court of Claims.

Dec. 13, 1978.

John I. Heise, Jr., Silver Spring, Md., atty. of record for plaintiff. Robert A. Hahn, Silver Spring, Md., and Sam Resnicoff, New York City, of counsel.

Emory J. Bailey, Wheaton, Md., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant.

Before FRIEDMAN, Chief Judge, and KUNZIG and BENNETT, Judges.

## ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

KUNZIG, Judge:

This civilian personnel action comes to us on the parties' cross-motions for summary judgment, and plaintiff's motion, in the alternative, to remand to our Trial Division for further ascertainment of facts. We are faced with the difficult problem of whether a customs inspector (plaintiff, Masino) was properly terminated on the basis of his personal use and transportation of marijuana, when the duties of his position require him to enforce federal laws against the illegal importation of marijuana. Plaintiff also raises certain alleged procedural irregularities.

Masino sues in this court for reinstatement and back pay claiming wrongful removal from his position with the U.S. Customs Service. With some reluctance, and agreeing that the issue is close, we find no material procedural flaw, and hold that the Civil Service Commission in sustaining plaintiff's removal for cause was neither arbitrary, capricious nor unsupported by substantial evidence.

Plaintiff joined the U.S. Customs Service as a Customs Control Officer in August 1972 and served satisfactorily in New York with the usual promotions until July 1974 when he was promoted to Customs Inspector and assigned to Nogales, Arizona. In March 1975, while in Nogales, plaintiff was advanced to Customs Inspector, GS–9.

On May 20, 1975, plaintiff was interviewed by agents of the Customs Bureau of

Internal Affairs. Plaintiff was first admonished according to paragraph (j) of section 27.39 of the Customs Manual as follows:

Mr. Masino, I am a Special Agent of the U.S. Customs Service assigned to Internal Affairs, conducting an investigation solely administrative in nature. I am investigating an allegation regarding your use of marijuana.

Under paragraph (j) of section 27.39 of the Customs Manual, it is required that you disclose any information in your possession pertaining to the matter which I am investigating and answer any proper questions which I might put to you. You may be subject to disciplinary action for the failure or refusal to answer proper questions relating to the performance of your duties as an employee of the U.S. Customs Service.

You are further advised that the answers you give to my questions or any information or evidence which is gained by reason of your answers cannot and will not be used against you in any subsequent criminal proceeding, except that you may be subject to criminal prosecution for any false answer that you give to any of my questions. Is that clear to you?

After plaintiff replied, "Yes, it is," he was placed under oath and testified in general as to the following.

Plaintiff has used marijuana. He used it in the service in 1969, quite a few times when he was in the Navy, and occasionally thereafter. He testified that he used it once or twice a month. Since he had come to Nogales, he had used marijuana about four or five times. He testified he smoked with Customs Inspector Jose Edwards at his house, once probably alone, and once or twice with his wife. He also offered Inspector Edwards a marijuana cigarette. Masino said the marijuana he used and offered to Inspector Edwards he had brought with him from New York. He brought about a half an ounce of marijuana.

The May 20, 1975 interview was recorded on tape and transcribed on or about July 14, 1975.[1] On that date, plaintiff was given the opportunity to read and make changes in the transcription. Plaintiff crossed out the response to the question "Approximately what quantity of marijuana did you bring from New York," namely "a half ounce" and wrote in "one quarter (¼) ounce." Plaintiff initialed the change "T.J. M."

On September 25, 1975, plaintiff was issued a notice of a proposal to remove him for cause from the U.S. Customs Service. He was charged with four specifications involving violation of Treasury Personnel Manual, Section 0.735–54 *Falsification of Official Records*[2] (Charge I, no longer at issue before this court), and charged with four specifications involving violation of Treasury Personnel Manual Section 0.735–56 *General Conduct Prejudicial to the Government*[3] (Charge II) of which three

1. The tape of the interview, after being transcribed, was re-used and thus was no longer available.

2. Section 0.735–54 reads in pertinent part:
Employees shall avoid making false, misleading or ambiguous statements, deliberately or willfully, whether verbal or written, in connection with any matters of official interest. Some of those matters of official interest are: Transactions with the public, other Federal agencies or fellow employees; application forms and other forms which serve as a basis for appointment . . . . .

3. Section 0.735–56 reads in pertinent part:
An employee shall not engage in criminal, infamous, dishonest, immoral, or notoriously disgraceful conduct, or other conduct prejudicial to the Government.

Specification I of Charge II reads as follows: On May 20, 1975, in a sworn statement to Special Agent William M. Cecil, at the Office of the District Director, Nogales, Arizona, you admitted giving a false statement to the interviewer conducting your background investigation prior to your entry on duty with the U.S. Customs Service on August 7, 1972. The false statement concerned the use of marijuana, which you claimed at that time never to have used. However, you admitted the use and knowledge of such use of marijuana to Agent Cecil at the time of your statement to the background interviewer. Your stated reason for denying the use of marijuana was to protect your chances for employment by the Customs Service.
Specification II of Charge II reads as follows:

specifications[4] now remain at issue before this court.

The next step in the sequence of factual events came on November 11, 1975, when plaintiff and his representative made an oral reply to the proposed adverse action. Masino's representative argued that he had been denied due process at the time of the May 20, 1975 interview for the reason that Masino was told that failure to answer questions would result in his being subject to disciplinary action. Most importantly, at that oral reply, plaintiff did not deny his May 20, 1975 statements and did not deny the authenticity of the transcription of those statements signed by plaintiff on July 14, 1975.

On February 6, 1976, plaintiff's representative was given the summary of the November 11, 1975 oral reply and on February 18, 1976, that representative was asked to make comments thereon. Defendant alleges that plaintiff's representative did not thereafter object or otherwise comment on this summary of the November 11, 1975 oral reply.

The Regional Commissioner, U.S. Customs Service, on March 4, 1976, sustained all charges and specifications and found that they warranted the removal of plaintiff to promote the efficiency of the service effective March 19, 1976. Plaintiff was notified of his appeal rights and was removed from the service on that date.

On March 26, 1976, plaintiff appealed the removal action to the Civil Service Commission and on July 27, 1976, a hearing was held. At the hearing, plaintiff basically affirmed his use of marijuana as a Customs Inspector, recanted part of his May 20, 1975 statement (mainly with regard to the fre-

quency of his marijuana use and to his having brought marijuana from New York to Nogales).

At the hearing Masino testified he had used marijuana "on very infrequent occasions, maybe a couple of times" while employed as a Customs Patrol Officer. On May 20, he had admitted he used marijuana "at least once or twice a month" during the same time period. Plaintiff further testified before the CSC that he had used marijuana "once or twice" in Arizona, while on May 20, he had admitted using marijuana "four or five times." Masino confirmed the fact that he had offered his own cigarettes (marijuana) to Mr. Edwards. He further testified that he had only smoked with Mr. Edwards once and once alone, while on May 20, he had stated he had smoked also with his wife. With regard to the transportation of marijuana from New York to Arizona, Masino testified that he had packed his household goods for moving and "didn't have any idea that it was coming down here [Arizona]."

On October 1, 1976, the appeals authority found Specifications II, III and IV of Charge II (*i. e.*, three specifications) were supported by a preponderance of credible evidence, were procedurally valid, that the removal was not arbitrary and capricious or unreasonable under the circumstances, and that there existed sufficient nexus between the admitted off duty conduct and the promotion of the efficiency of the service through the removal.

The major findings of the appeals authority with regard to the three specifications were:

On May 20, 1975, in a sworn statement to Special Agent William M. Cecil, at the office of the District Director, Nogales, Arizona, you admitted that you first used marijuana while you were in the U.S. Navy in 1969. You stated that you used marijuana frequently while in the Navy and occasionally thereafter. You further stated that you used marijuana regularly until one year ago.
Specification III of Charge II reads as follows: On May 20, 1975, in a sworn statement to Special Agent William M. Cecil at the Office of

the District Director in Nogales, Arizona, you admitted transporting marijuana from New York to Nogales, Arizona, for your personal use.
Specification IV of Charge II reads as follows: On May 20, 1975, in a sworn statement to Special Agent William M. Cecil at the Office of the District Director, Nogales, Arizona, you admitted that since your arrival in Nogales on or about June 30, 1974, you have used marijuana.

4. The remaining three specifications are II, III and IV, n. 3, *supra.*

. ˙ . . Charge II, Specification II, the allegation that appellant used marijuana frequently while in the U.S. Navy dating from 1969, occasionally thereafter, and regularly until approximately September 1974, appellant's May 20, 1975 statement indicates that he used marijuana once or twice a month while in the military service and occasionally thereafter. He also reported in that statement the use of marijuana on four or five occasions since transferring to Nogales, Arizona on July 1, 1974. At hearing, appellant recanted his statement as to the frequency of his use of marijuana. He attempted to correct the record to indicate that he only used marijuana "once or twice" while serving as a Customs Patrol Officer (from August 1972; and, subsequently on two occasions in Nogales during August 1974 * * *. We find that Specification II is supported by credible evidence as reflected by the sworn statement of appellant. His subsequent testimony at the hearing did not refute the validity of his earlier affidavit except arguably to the *extent* of his use of marijuana from 1969 to August 1974. We find that Specification II of Charge II is sustained by the preponderance of credible evidence. . . [Charge II] Specification III alleging that appellant transported marijuana from New York to Nogales for his personal use, the May 20, 1975 sworn statement by appellant was to the effect that the marijuana that he smoked with another Customs Inspector was "some from back home, from New York" and that he brought "one quarter (¼) ounce" from New York. At hearing, appellant testified that he did not transport the marijuana himself but that it was in his "furniture and stuff" that was packed in a van and shipped to Nogales * * *. We find that appellant was in actual possession of the marijuana in question when he lived in New York and that he was responsible for its shipment in his household goods from New York to Nogales. Accordingly, we sustain Specification III of Charge II.

. . . [Charge II] Specification IV and the allegation that appellant admitted to the use of marijuana since he arrived in Nogales on or about June 30, 1974, appellant responded in his May 20, 1975 sworn statement that he had so used it on four or five occasions since coming to Nogales. At hearing, appellant sought to change his testimony to indicate that he smoked marijuana in Nogales on only two occasions, during August 1974. Appellant did concede that at one of those incidents he provided marijuana to another customs inspector * * *. We find that Specification IV of Charge II is sustained by a preponderance of credible evidence.

On May 18, 1977, Masino timely filed suit in this court.

Plaintiff's argument falls into two major categories. First, procedural irregularities and the lack of substantial evidence; second, there was no proper nexus between plaintiff's conduct and the efficiency of the service. Plaintiff also argues, closely tied in with point two, that the penalty of dismissal was grossly disproportionate to the alleged misconduct. On the overall, plaintiff basically says that his removal was arbitrary and capricious.

Defendant, of course, denies any procedural irregularities and claims that the removal was supported by substantial evidence. Secondly, defendant counters by finding a clear nexus between plaintiff's use of marijuana and the efficiency of the Customs Service. Defendant further argues that the "punishment does fit the crime," so to speak, and that the action of the U.S. Customs Service in terminating plaintiff and the affirmance of said action by the appeals authority were not arbitrary and capricious.

We hold for the Government.

## I.

In our analysis of Masino's argument, we turn first to his allegations of procedural irregularities with regard to the administrative proceeding below. Plaintiff raises various due process claims concerning the

statements he gave on May 20, 1975. Specifically, he alleges (1) he was not informed of any charges against him and (2) he was denied representation by an attorney or union official during the course of the interview. Additionally, Masino has attacked the veracity of the May 20 transcript.

■ Before the May 20 interview, Masino was advised it would be "solely administrative in nature" concerning allegations of his use of marijuana. The only purpose of this interview was to discover facts and to offer Masino an opportunity to respond to the allegations presented. It was not to be a *final* agency determination or adjudication on whether plaintiff should be removed from his position. As a result, due to the purely investigatory nature of the proceeding, plaintiff was not entitled to advance notice of the May 20 interview. *Womer v. Hampton*, 496 F.2d 99, 106 (5th Cir. 1974). Moreover, since no formal charges were made against Masino until September 29, 1975, the agency was obviously under no duty on May 20, 1975 to advise plaintiff of charges that did not yet exist.

■ Additionally, Masino was advised before the interview that any answers he gave could not be used against him in any subsequent *criminal* proceeding except if such answers were false.[5] Such a procedure was in strict compliance with our decision in *Kalkines v. United States*, 473 F.2d 1391, 200 Ct.Cl. 570 (1973). In *Kalkines*, we held that an employee may be compelled to answer questions or be subject to dismissal, if the threat of future criminal prosecution is effectively negated. *See, Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968).

A corollary of the foregoing is that where the possibility of criminal prosecution for one's answers has been removed, there is no constitutional necessity for warning an employee of a right to silence or a right to counsel.[6] *Womer v. Hampton, supra* at 108. Since we find that the interview of May 20 was preceded by appropriate statements to the plaintiff negating any possible use of his answers in a future criminal proceeding, it is clear that no due process rights of the plaintiff were violated.

■ Plaintiff has further attacked the appeal examiner's conclusion that the May 20 transcript "is deemed to be acceptable evidence of the truth of the statements contained therein." It is Masino's position that it was incumbent upon the appeals examiner to inquire into the voluntary nature of his admissions by requiring the agency to produce witnesses.

Plaintiff testified he signed the transcript on July 14, 1975 after promises of leniency and the fact that, "I didn't want to spend hours there so I signed the statement." At the outset, we observe that no request, as required by 5 C.F.R. § 772.307(c)(2), had been made by the plaintiff for the agency to produce witnesses to inquire into the voluntary nature of his admissions.[7] In any event, Masino was offered the opportunity on July 14 to make changes or discredit the May 20 transcript if he thought it failed accurately to reflect his answers. With the whole transcript before him, he made only one change. Further, on November 11, 1975 plaintiff once again failed to contest the accuracy of the transcript when given the chance to respond orally to his proposed termination. Finally, at a Civil Service

---

5. *See* § 27.39 of the *Customs Manual* paragraph (j), *supra*, containing such a statement which is also printed on the standard interview form.

6. Plaintiff also claims a right to have a union representative at his side, but has not cited any statute, regulation or case requiring the presence of a union representative at an investigative proceeding of the type involved in the instant case.

7. 5 C.F.R. 772.307(c)(2) reads in pertinent part:
   (2) Both parties are entitled to produce witnesses and to introduce signed sworn

statements or letters of interrogatory. The Appeals Authority is not authorized to subpoena witnesses. Any agency that has employees entitled to appeal to the Appeals Authority under this part shall make its employees available to furnish sworn statements or to appear as witnesses at the hearing when requested by the Appeals Authority after consideration of a *request by either party* to the appeal . . . (emphasis added)

Commission hearing on July 27, 1976 (over a year since the original statement), Masino in the presence of his counsel, reaffirmed his use of marijuana while employed as a Customs Inspector, but recanted a portion of his May 20 statement as to the frequency of his marijuana use and as to his having knowingly brought marijuana from New York to Nogales, Arizona at the time of his transfer.

Thus, on three separate occasions, plaintiff never denied the essential fact in the May 20 statement—the smoking of marijuana while employed as a Customs Inspector. Based on these factors, it is clear that the voluntary nature of Masino's May 20 admissions was established before the CSC, since it is inconceivable that if he had been coerced, he would have acquiesced on July 14, again on November 11, and admitted the essential facts contained in the transcript in the presence of counsel, before the CSC on July 27. Masino had the opportunity to contest or change his answers; he failed so to do.[8]

■ Thus, we hold that no material procedural irregularities exist to vitiate the termination of plaintiff. The transcript of the May 20 interview plus plaintiff's independent admissions at his July 27 hearing were properly relied upon by the CSC in sustaining Masino's removal.[9] Additionally, we hold there was substantial evidence present to support such a determination.

## II.

■ Secondly, we examine the nexus argument and the related issue of disproportionate punishment. The "issue of whether an employee's termination will promote the 'efficiency of the service' presents an inquiry which invokes the discretion of the administrative agency involved." *Young v. Hampton*, 568 F.2d 1253, 1256 (7th Cir.

1977). *See, e. g., Rifkin v. United States*, 209 Ct.Cl. 566, 584 (1976), *cert. denied*, 429 U.S. 1098, 97 S.Ct. 1117, 51 L.Ed.2d 545 (1977); *Wathen v. United States*, 527 F.2d 1191, 1197, 208 Ct.Cl. 342, 351–54 (1975), *cert. denied*, 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976); *Pauley v. United States*, 419 F.2d 1061, 1066 (7th Cir. 1969).

■ It is long settled that this court limits its review of the administrative action in civilian pay cases to a determination of whether the adverse action disclosed by the administrative record or by a *de novo* trial, or both, is illegal because it violates applicable statutes or regulations, or is demonstrably in bad faith or malicious because it is arbitrary, capricious or devoid of substantial evidence to support it. The good faith of those taking administrative action is presumed. *Wathen v. United States, supra*, 208 Ct.Cl. at 351, 527 F.2d at 1197; *Boyle v. United States*, 515 F.2d 1397, 207 Ct.Cl. 27 (1975); *Holman v. United States*, 383 F.2d 411, 181 Ct.Cl. 1 (1967); *Finn v. United States*, 152 Ct.Cl. 1 (1961); *Croghan v. United States*, 89 F.Supp. 1002, 116 Ct.Cl. 577, *cert. denied*, 340 U.S. 854, 71 S.Ct. 71, 95 L.Ed. 626 (1950).

However, since this is only a presumption of good faith, it is, of course, rebuttable. In *Schlegel v. United States*, 416 F.2d 1372, 189 Ct.Cl. 30 (1969), *cert. denied*, 397 U.S. 1039, 90 S.Ct. 1359, 25 L.Ed.2d 650 (1970), we suggested that "whether a person's discharge will promote the efficiency of the service is an administrative decision to be determined within the discretion of the agency, and no court has power to review the action, if taken in good faith." As there used, the concept of 'good faith' is not limited to the agency's motives—whether it acted maliciously or for improper purposes—but also includes the question whether the agency's action was arbitrary

---

**8.** Moreover, the fact he had such opportunity is highlighted by the one change plaintiff saw fit to make on July 14, 1975.

**9.** Plaintiff contends and defendant agrees that the May 20 transcript was not notarized until July 14, 1975, but that the date appearing thereunder is May 20, 1975. While the court in

no way condones such an action, it does not, as plaintiff urges, detract from the veracity of the statement. Since Masino still had the opportunity to correct the transcript, which he did, any ministerial error on the part of the Customs Service did not affect the veracity of the transcript.

or capricious. Clearly our court has power to review the action to find out *if ·it was taken in good faith*. Neither the *Schlegel* court nor the *Wathen* court intended to indicate that action could be deemed in 'good faith' if it involved a flagrant abuse of discretion. If an agency action is arbitrary or capricious, then that action was not taken in good faith.

The same argument phrased in slightly different language appears in the recent 7th Circuit analysis of the nexus problem. *Young v. Hampton,* 568 F.2d 1253 (7th Cir. 1977). In *Young,* the 7th Circuit said, and we agree:

Since an agency must make at least two separate determinations in its decision to discipline an individual employee, we are compelled, even under our narrow scope of review, to ascertain if either of those two determinations was arbitrary or capricious. The first judgment which an agency must make is that the individual to be disciplined actually committed the complained of acts (Point I). This is usually a question of facts adduced by the agency at the employee's hearing which tend to show the employee's involvement or participation in the alleged activities. It is these facts which we must review to determine whether the agency had a rational basis for its determination that the employee's misconduct actually occurred.

· · ·

Once the agency has made a determination that the employee misconduct has, in fact, occurred, it must make a second determination. This second determination, required by 5 U.S.C. § 7501(a), must be to the effect that the disciplinary action taken against the employee 'will promote the efficiency of the service,' (Point II). The agency may base this determination also on evidence adduced at the employee's hearing which tends to connect the employee's misconduct with the efficiency of the service; or, in certain egregious circumstances, where the adverse effect of retention on the efficiency of the service could, in light of the nature of the misconduct, reasonably be deemed substantial, and where the employee can introduce no evidence showing an absence of effect on the efficiency of the service, the nature of the misconduct may 'speak for itself.' Regardless of its basis, however, this second determination is also subject to review and also may be neither arbitrary nor capricious. *Young v. Hampton,·* 568 F.2d 1253, 1257 (7th Cir. 1977).

■ Thus, in determining the nexus problem, we now look to see whether the action of the agency, in holding that Masino's discharge would promote the efficiency of the service, was taken in good faith. Was the action of the plaintiff so egregious that the adverse effect of retention of the efficiency of the service could reasonably be deemed substantial? In other words, does the nature of the misconduct "speak for itself"?

It is clear that decisions in such delicate matters are frequently very difficult. Each case is different. Each case should be judged on an individual basis. 752–1 Federal Personnel Manual (FPM) Supplement Sec. S3–1(a) (July 2, 1974) provides as follows:

a. A cause. Basically a *"cause" for disciplinary adverse action is a recognizable offense against the employer-employee relationship* . . . .. [W]hat constitutes a proper or valid cause is essentially for the agency to decide. Section 01.3(d) of Executive Order 9830 makes agencies responsible for removing, demoting, or reassigning any employee whose conduct or capacity is such that *one of these actions will "promote the efficiency of the service."* (emphasis added)

752–1 FPM Supplement Sec. S3–1(b) (July 2, 1974) further provides as follows:

b. A cause "as will promote efficiency." *Simply having an identifiable cause is not sufficient to warrant adverse action.* In addition, the *action must be "for such cause as will promote the efficiency of the service* . . . .." A just and substantial cause is necessary for an adverse action and the *action must be determined on the merits of each individual case.*

Differences in agency missions, in codes of penalties, or in other internal regulations may result in a cause and an action which combine to be perfectly proper in one agency being improper in another. For example, *an offense involving a violation of law, which would warrant removal of a law-enforcement employee in an agency with a mission of law enforcement, might not warrant comparable action against a warehouse forklift operator in another agency.* In every case the agency's action should be based on the conclusion that the adverse action is warranted and reasonable (i. e., the agency has a just cause for the action taken) and that the agency can establish, or "prove" the facts which support its reason for action. (emphasis added)

Unfortunately for plaintiff in the instant case, he cannot show that the action of the Customs Service in terminating his employment was arbitrary or capricious. Masino in his position as a Customs Inspector was specifically charged with enforcing the laws concerning contraband, including marijuana. Since possession and/or use of marijuana is a violation of federal criminal statutes, he was clearly not conducting himself in a manner to be expected of a Government employee engaged in law enforcement duties. This was what the appeals authority said, and we agree. Further, in addition to the language of the appeals authority, the transportation and use of the very contraband which a law enforcement officer is sworn to interdict, is clearly misconduct which "speaks for itself." Obviously, the disciplinary action of termination taken against Masino to "promote the efficiency of the service" cannot be said to be without a rational basis. His discharge was neither arbitrary nor capricious.

This action is sustained by a long line of cases in a similar vein. To cite but a few: *Giles v. United States,* 553 F.2d 647, 213 Ct.Cl. 602 (1977) (IRS agent whose responsibility it was to ferret out delinquent taxpayers, who failed timely to file returns himself over a three-year period); *Wroblaski v. Hampton,* 528 F.2d 852, 853 (7th Cir. 1976) (an employee of the Immigration &

Naturalization Service, dismissed for employing aliens, subject to deportation, as domestics in his home); *Wathen v. United States,* 527 F.2d 1191, 208 Ct.Cl. 342 (1975), *cert. denied,* 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976) (IRS agent kills his girlfriend in a public park in front of many witnesses with a 4-barreled derringer); *Wood v. U. S. Post Office Department,* 472 F.2d 96, 99 (7th Cir.), *cert. denied,* 412 U.S. 939, 93 S.Ct. 2775, 37 L.Ed.2d 399 (1973) (Post Office foreman dismissed for participation in the falsification of employees' time records, including his own, in the very office which he supervised); *Dew v. Halaby,* 115 U.S.App.D.C. 171, 317 F.2d 582 (1963), *cert. denied,* 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 550 (1964) (admitted drug user employed as an air traffic controller); *Madden v. United States Civil Service Commission,* No. C–73–1281 SC (N.D.Cal. Feb. 27, 1974) (dismissal of Navy winchman whose job involved loading live ammunition on charges stemming from civilian drug use).

Closely tied in with his nexus argument and in addition thereto, plaintiff has also raised the point that even if the agency's decision to discipline him was made in good faith and was not arbitrary and capricious, the punishment in itself *was* arbitrary and capricious, because it was grossly disproportionate to the employee misconduct involved. In other words, plaintiff maintains the punishment did not fit the crime. We have addressed this problem before, albeit infrequently. *Boyce v. United States,* 543 F.2d 1290, 211 Ct.Cl. 57 (1976); *Power v. United States,* 531 F.2d 505, 209 Ct.Cl. 126 (1976). However, in the instant case, putting our views in their simplest and clearest form, we cannot say that the Customs Service has punished an agent too severely when it discharges him for smoking and transporting marijuana, the illegal smuggling of which he is sworn to uncover and prevent. How can we condemn the Customs Service for taking such an action in good faith? We decline so to do.

Thus, we hold that a clear nexus has been proven between Masino's conduct and the

efficiency of the service. The misconduct speaks for itself and the action of the Customs Service was neither arbitrary nor capricious, but rather in obvious good faith.

Accordingly, upon careful consideration of all the parties' submissions and the record, and after oral argument, plaintiff's motion for summary judgment is denied. Plaintiff's alternative motion to remand to our Trial Division for further ascertainment of facts is also denied.[10] Defendant's cross-motion for summary judgment is granted, and the petition is dismissed.

10. Plaintiff has also moved to strike Exhibit I of defendant's brief in support of its motion for summary judgment. Since we base our decision solely on the administrative record and the exhibit in question does not appear as part of the "certified" CSC record, we have disregarded the exhibit in reaching our conclusion. The motion is therefore mooted.