**Paul V. CONNOLLY, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Respondent.**

**Appeal No. 84–865.**

United States Court of Appeals, Federal Circuit.

June 26, 1985.

William A. Brown, Brown & Prince, Boston, Mass., argued for petitioner.

Sara V. Greenberg, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With her on the brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, and Robert A. Reutershan.

Before FRIEDMAN and BENNETT, Circuit Judges, and MILLER,* Senior Circuit Judge.

BENNETT, Circuit Judge.

Paul V. Connolly [1] appeals the final decision of the Merit Systems Protection Board, No. BN07528210088, in which the board vacated the initial decision of its presiding official and sustained Connolly's removal by the United States Department of Justice, United States Marshals Service. 18 M.S.P.R. 39 (1983). We affirm.

## BACKGROUND

The Department of Justice removed Connolly, a Deputy United States Marshal (DUSM) for over 10½ years, for events which occurred on April 19, 1981. At approximately 6:30 p.m. Connolly observed

---

* The Honorable Jack R. Miller assumed senior status, effective June 6, 1985.

1. By order of the court on May 22, 1985, George Miller, Esq., Administrator of the Estate of Paul Connolly, was substituted as party petitioner. Mr. Miller's motion therefor advised the court

that he had been duly appointed administrator of petitioner's estate by the Barnstable County, Massachusetts Probate Court. For convenience of reference, Connolly will be referred to as petitioner in this opinion since he filed the appeal.

two individuals using a screwdriver and wire coathanger in an attempt to open a door of a 1980 Lincoln in the parking lot of the Holiday Inn in Falmouth, Massachusetts. Connolly was off duty at the time. He assumed that a felony was being committed and that there was insufficient time to call the local police. He approached the individuals and identified himself as a DUSM. When Connolly requested the individuals to produce identification and proof of car ownership, they turned toward him. Thinking that one of the individuals had a gun, Connolly drew his automatic pistol and announced that both were under arrest. One of the individuals, later identified as Raymond J. Gonsalves, called out to his girlfriend, who was sitting in a nearby car, to telephone the police. The other individual, later identified as Daniel L. Pacheco, stated that his brother owned the Lincoln. Notwithstanding the arrest at gun point, Connolly permitted Pacheco to enter the Holiday Inn to get his brother. When they returned, Robert Pacheco identified himself by showing Connolly his driver's license. He stated that he owned the Lincoln and because the keys were locked inside he had asked Daniel to open it. However, he did not present the vehicle registration which was apparently also inside the car.

Patrolman (Ptl.) David F. Cusolito of the Falmouth Police Department arrived at the scene. Ptl. Rufino L. Gonsalves, brother of Raymond Gonsalves, arrived a few minutes later. Ptl. Cusolito examined and returned Connolly's government credentials and took possession of his pistol. In order to file reports, all parties were advised to go to the nearby Falmouth police station. Connolly rode to the police station in Ptl. Cusolito's cruiser, at which time he complained to Cusolito that he had arrested Daniel Pacheco and Raymond Gonsalves but that Cusolito had released them. After obtaining tools to open the car, Raymond Gonsalves and the Pacheco brothers arrived at the police station approximately one hour later. Ptl. Gonsalves took his brother Raymond and Daniel Pacheco to the Alert Room, where they wrote their statements.

Sgt. Paul J. Poulos telephoned the Marshals Service in Boston to verify that Connolly was a United States Marshal. After learning what happened at the Holiday Inn, Sgt. Poulos informed Connolly that he knew Raymond Gonsalves and Robert Pacheco and asked Connolly if he wanted to pursue the matter. Connolly responded affirmatively, saying that he had not seen proof of ownership of the Lincoln. After speaking with the police chief, who told him that it was Connolly's arrest, Poulos informed Raymond Gonsalves and Daniel Pacheco that the U.S. Marshal had arrested them. They were booked and locked in cells.

At some point thereafter during the evening, Connolly became satisfied that Robert Pacheco owned the Lincoln and dropped the charges. Unknown to Connolly, the police had already released the two men on $10 bail.

During the course of events at the police station, Connolly threatened to file a complaint against Ptl. Cusolito if Cusolito confiscated his gun and credentials. In threatening Ptl. Cusolito regarding his possible appearance in court, Connolly used obscene language that was insulting and abusive.

On September 28, 1981, the United States Marshals Service, Boston, Massachusetts, notified Connolly of his proposed removal, giving the following reasons for the adverse action:

(1) false arrest;

(2) misconduct off duty (misuse of official authority); and

(3) disrespectful conduct (use of insulting, abusive, or obscene language to or about others).

The Marshals Service removed Connolly, effective December 11, 1981. *See* 28 U.S.C. § 562 (1982).

On appeal, and after a hearing at which Connolly did not testify or produce witnesses in his behalf, the presiding official found that Connolly had probable cause for arresting Raymond Gonsalves and Daniel Pa-

checo. Accordingly, he determined that the Marshals Service had failed to support its charge of false arrest by a preponderance of the evidence as required by 5 U.S.C. § 7701(c)(1)(B) (1982). The presiding official considered reasons (2) and (3), above, to be separate charges for the same offense, the confrontation with Ptl. Cusolito. Rule 16 of the Marshals Service's Table of Offenses and Discipline (misconduct off duty which would adversely affect the reputation of the Department of Justice), gives "arrest" as an example of an offense covered by reason (2), which the presiding official presumed to refer only to the arrest of a Marshal. Thus, he found that the Department of Justice did not prove its misconduct off-duty charge because the rule was inapplicable. The presiding official found that the Marshals Service proved reason (3) by a preponderance of the evidence. He found however that the removal penalty was too harsh and therefore mitigated the adverse action to a 15-day suspension.

The Department of Justice appealed the decision to the board, asserting that the presiding official (1) erroneously interpreted Rule 16 concerning misconduct off duty and (2) erred in finding that it had failed to prove the charge of false arrest. The board agreed with the Department of Justice and held that the agency had proved each of the three charges and that the penalty of removal was authorized and "within the parameters of reasonableness." Accordingly, the board vacated the presiding official's initial decision and sustained the removal action.

### DISCUSSION

In this appeal Connolly makes two basic arguments for reversal of the board. First, he claims that the board improperly entertained the petition for review when it allowed the issue of whether the agency had failed to prove the charge of false arrest to be grounds for appeal. Second, he claims that the penalty of removal was disproportionate to the offenses sustained and that his conduct did not impair the efficiency of the service. Connolly challenges, as an abuse of discretion, the full board's alleged failure to give "proper weight" to the findings by the presiding official in its reinstatement of the agency's action.

### I

Pursuant to 5 U.S.C. § 7701(e)(1), a party may petition the board to review the initial decision of the presiding official. Here, Connolly contends that the board abused its discretion because it granted the Department of Justice's petition for review in violation of an implementing regulation, 5 C.F.R. § 1201.115 (1984), which provides:

the Board *may* grant a petition for review when it is established that:

(a) New and material evidence is available that, despite due diligence, was not available when the record was closed; or

(b) The decision of the presiding official is based on an erroneous interpretation of statute or regulation. (Emphasis added.)

Connolly refers us to no authority which has construed this regulation to limit the board's authority of review only to these conditions.[2] Law and logic point the other way. The presiding official's initial decision becomes the decision of the board if review is denied, or if the board does not open the case sua sponte. The regulation simply spells out two circumstances under which review may be granted. But, the board's authority to review is plenary as to those actions made appealable to it by law. *Maddox v. Merit Systems Protection Board*, 759 F.2d 9 (Fed.Cir.1985). The presiding official's initial decision is a part of the record the board may review, but it may make its own record. The regulations

---

**2.** The respondent's brief cites *James v. Federal Energy Regulatory Commission*, 747 F.2d 1581, 1582 (Fed.Cir.1984), *reh'g denied*, 755 F.2d 154 (Fed.Cir.1985), but distinguishes it. That case dealt with other issues and held that a petition for review filed with the board does not necessarily limit issues before the court and that the determinative fact is whether petitioner or respondent knowingly abandoned or waived claims or issues raised below.

contain other language which provides for reopening of the case by the board, oral arguments, and the filing of briefs. The board may "[t]ake any other action necessary for final disposition of the case," 5 C.F.R. § 1201.116(a)(4), or it "may affirm, reverse, remand, modify or vacate the decision of the presiding official, in whole or in part. Where appropriate, the Board shall issue a final decision and order a date for compliance." *Id.* at § 1201.116(b). It is further provided in section 1201.117:

> The Board may reopen and reconsider a decision of a presiding official on its own motion at any time, notwithstanding any other provisions of this part. [*Cf.* 5 U.S.C. § 7701(e)(1)(B).]

It is the final decision of the board we are now called upon to review. 5 U.S.C. § 7703; 5 C.F.R. § 1201.118.

While we have not been called upon before to address the issue of whether a petitioner can invoke 5 C.F.R. § 1201.115 to prevent review by the board, the United States Court of Appeals for the District of Columbia did so in *Dunning v. National Aeronautics & Space Administration,* 718 F.2d 1170, 1173 (D.C.Cir.1983). There Judge Scalia said:

> While setting forth the showings on the basis of which "the Board may grant a petition for review," § 1201.115 does not explicitly provide that review will not be granted in any other circumstance. Moreover, any negative implication that might ordinarily arise is eliminated by the second following section, which provides that "[t]he Board may reopen and reconsider a decision of a presiding official on its own motion at any time, notwithstanding any other provision of this part." 5 C.F.R. § 1201.117. (It is clear that "reopening" does *not* require that the presiding official's decision first become final through expiration of the specified period without filing of an appeal. *See* 5 C.F.R. § 1201.113(a).) That provision makes it clear beyond doubt that

§ 1201.115 is not a categorical restriction upon the Board's review authority, but only sets forth the most common situations in which review will ordinarily be entertained. Or to put the point another way: If, in entertaining this appeal, the Board was acting beyond the specified limits of § 1201.115, it was clearly acting within its reserved discretion under § 1201.117. (Emphasis in original.)

■ The *Dunning* court also found some support in the history of the regulation for its determination that an expansive reading of section 1201.115 is the better-reasoned approach. *Id.* at 1173 n. 1. We agree. It would be anomalous to assume that pursuant to 5 U.S.C. § 7701(j) the board would prescribe one regulation limiting its authority to grant a petition for review, only to prescribe another regulation providing itself with absolute review authority. A regulation which by its own definition is permissive, not precatory, cannot be a mandatory restriction. *See generally Dawson v. Merit Systems Protection Board,* 712 F.2d 264, 266–67 (7th Cir.1983) (discussing the board's authority to reopen a case). Accordingly, we hold that the board *may* grant a petition for review on grounds not falling within the ambit of section 1201.115(a) or (b).[3] Such a holding is consonant with the broad policy considerations discussed in *Bookman v. United States,* 453 F.2d 1263, 1265, 197 Ct.Cl. 108 (1972).

## II

Turning now to the second prong of the appeal, Connolly also asserts that the board abused its discretion by giving insufficient weight to the presiding official's assessment of the facts. In order to address the merits of this assertion properly, we must make further reference to the standard by which the board should review its presiding official.

■ Although the board has the power to determine questions of fact and law in

---

**3.** Obviously, the board is not required to review on the merits every request for review presented to it. *Schaffer v. Merit Systems Protection*

*Board,* 751 F.2d 1250, 1254 (Fed.Cir.1985) (approving the board's exercise of wide discretion in determining what the board should review).

the first instance, it may refer any case appealed to it to a presiding official. *See* 5 U.S.C. § 7701(b); 5 C.F.R. §§ 1201.4(a), 1201.41. A presiding official does not have an independent statutory basis for his jurisdiction. He hears only those cases referred to him by the board. The decision of a presiding official is merely "an initial (or recommended) decision." 5 C.F.R. § 1201.111. Such decision becomes final if a petition for review is denied or if a party to the appeal or the Special Counsel or the Director of the Office of Personnel Management does not petition the board for review within 30 days after receipt of the decision, 5 U.S.C. § 7701(e)(1), or within 35 days after issuance of the decision, 5 C.F.R. §§ 1201.113, 1201.114, unless time is waived, 5 C.F.R. § 1201.12, or if the board does not reopen and reconsider the case on its own motion. In any case reviewed or reopened, the "[b]oard may affirm, reverse, remand, modify or vacate the decision of the presiding official, in whole or in part." 5 C.F.R. § 1201.116(b). Given such a statutory and regulatory scheme, it is inappropriate to assume that the board is guided by customary standards of appellate review. *See Weaver v. Department of the Navy,* 2 MSPB 297, 298, 2 M.S.P.R. 129, 132 (1980), *petition for review denied,* 669 F.2d 613 (9th Cir.1982). To the contrary, the board is free to substitute its judgment for that of one of its presiding officials, *Curran v. Department of the Treasury,* 714 F.2d 913, 915 (9th Cir.1983); *McDonough v. United States Postal Service,* 666 F.2d 647, 648 n. 1 (1st Cir.1981), with deference of course to the presiding official on any issues of credibility. *Griessenauer v. Department of Energy,* 754 F.2d 361, 364 (Fed.Cir.1985).

When an employee who is adversely affected by a final decision of the board, such as Connolly, files a petition for review, this court is required to—

> review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be—
>
> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (2) obtained without procedures required by law, rule, or regulation having been followed; or
>
> (3) unsupported by substantial evidence[.]

5 U.S.C. § 7703(c). The initial (or recommended) decision of the presiding official is part of the record which this court reviews. When, as here, the decision of the full board differs from that of its presiding official, this court will engage in a more searching scrutiny of the record. *See Curran,* 714 F.2d at 915 and cases cited there.

In the case now on appeal to us, the board and its presiding official agreed on the basic facts underlying the charges against Connolly. With respect to credibility, the determinations of the presiding official cut against Connolly's case. The presiding official found that Connolly's argument that the Falmouth police officers had made the arrests was not credible. Although Connolly denied using obscene language, the presiding official found to the contrary.

■ Pursuant to our statutorily prescribed standard of review, we must determine whether the board properly concluded that, whatever Connally's good intentions were, he did not have reasonable grounds to believe that the two men he arrested were committing a federal felony.[4] Connolly charged the two men with "(1) tampering with a motor vehicle and (2) false

---

**4.** 18 U.S.C. § 3053 (1982) states:

"United States marshals and their deputies may carry firearms and may make arrests without warrant for any offense against the United States committed in their presence, or for any felony cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such felony."

28 U.S.C. § 570 (1982) states:

"A United States marshal and his deputies, in executing the laws of the United States within a State, may exercise the same powers which a sheriff of the State may exercise in executing the laws thereof."

identification displaying a weapon upon valid arrest." Even assuming that Connolly had reasonable grounds to believe the two men were committing these acts, Connolly has not cited any federal law which classifies either of them as a felony or as an offense against the United States. Thus, the full board properly reversed the presiding official and sustained the agency's charge of false arrest.

Both the presiding official and the board concluded that Connolly was off duty when the incident occurred. The presiding official concluded that the second charge, misconduct off duty (misuse of official authority), was not sustained because Rule 16 of the agency's Table of Offenses and Discipline was by its terms inapplicable to the charge. The board, however, sustained the second charge, finding that Connolly's action adversely affected the Department of Justice and, thus, implicitly impaired the efficiency of the service. We agree with the the board. The presiding official's narrow reading of the rule referred to in the background portion of this opinion was an error of law.

■ Connolly's conduct in this bizarre fiasco was not only improper and in excess of his authority, but his rash behavior impinged on the working relationship between the Marshals Service and the local authorities and adversely affected the reputation of the Department of Justice and its Marshals Service. He demonstrated questionable judgment in drawing his weapon and in later refusing to back down in pursuing his charges when it should have been apparent to a reasonably prudent man that there were no reasonable grounds to believe the accused were guilty. The local police were called at the request of the accused who readily identified themselves and their conduct was explained by the owner of the car, a brother of one of those arrested. However, Connolly apparently "got his back up," insisted that his suspects be booked and charged, and refused to admit his error until the affair had dragged on unreasonably long, even though the local police were unconcerned

with the incident and sought to reassure Connolly by vouching for the suspects. On the evening of the incident, Connolly's supervisor was informed over the telephone by the Falmouth police, that he "was on the borderline of being in protective custody for being intoxicated." This information later entered into the agency's decision to bring the removal charges. Finally, there was no excuse for his use of threatening, abusive, obscene language toward Ptl. Cusolito, the third reason for his discharge, sustained by both the presiding official and the board. *See Hayes v. Department of the Navy*, 727 F.2d 1535, 1539 (Fed.Cir.1984); *Masino v. United States*, 589 F.2d 1048, 1057, 218 Ct.Cl. 531 (1978).

The charges against petitioner which caused his removal were all sustained in the board's final decision now on appeal. Connolly made a false arrest, he engaged in misconduct off duty and in disrespectful conduct towards others. Connolly's contention that the board violated its regulation, 5 C.F.R. § 1201.115, is without merit. It was not restricted by that regulation.

■ As to petitioner's attack on the harshness of the penalty, and the board's failure to agree with its presiding official on this matter, we simply note that the board was entirely within its legal rights to disagree and that the table of penalties authorized the punishment imposed for the offenses committed, as charged. Penalty decisions are discretionary and not for the courts to overturn absent an abuse of discretion or violation of applicable statute or regulation. *Schapansky v. Department of Transportation*, 735 F.2d 477, 484 (Fed. Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984); *Weston v. Department of Housing & Urban Development*, 724 F.2d 943, 949 (Fed.Cir.1983).

Petitioner makes the point that the board opinion does not discuss or reweigh factors which should be considered in mitigation, as set forth in *Douglas v. Veterans Administration*, 5 MSPB 313, 5 M.S.P.R. 280 (1981), and approved in our various opinions. The agency considered factors in mitigation. The presiding official also con-

sidered these factors in detail, and the board rejected his conclusions, so how can it be said they were not considered? The board cited *Douglas*, which showed its awareness of the factors involved. Perhaps its opinion could have been more artfully written. But, it is not per se reversible error for the board not to address the *Douglas* factors specifically. *See generally Devine v. Sutermeister*, 724 F.2d 1558, 1565 (Fed.Cir.1983) (reviewing an award by an arbitrator). "Whether the guidelines established in *Douglas* were followed is but one factor to be noticed in our review." *Nagel v. Department of Health & Human Services*, 707 F.2d 1384, 1387 (Fed.Cir. 1983). But, it has been held that "failure to consider a significant mitigating circumstance constitutes an abuse of discretion." *VanFossen v. Department of Housing & Urban Development*, 748 F.2d 1579, 1581 (Fed.Cir.1984). *Douglas* states, "[o]nly if the Board finds that the agency failed to weigh the relevant factors, *or* that the agency's judgment clearly exceeded the limits of reasonableness, is it appropriate for the Board then to specify how the agency's decision should be corrected to bring the penalty within the parameters of reasonableness." 5 MSPB at 333, 5 M.S. P.R. at 306. (Emphasis added.) As stated in *Hunt v. Department of Health & Human Services*, 758 F.2d 608, 611 (Fed.Cir. 1985):

> Our statutory scope of review is narrow. Determination of an appropriate penalty is a matter committed primarily to the sound discretion of the employing agency. *Miguel v. Department of the Army*, 727 F.2d 1081, 1083 (Fed.Cir. 1984). Whether we would have chosen a different penalty is irrelevant. The court's responsibility is to determine whether the action taken was an abuse of discretion, arbitrary, capricious, in violation of statute, regulation or authorized procedure, or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1982). If the penalty imposed can pass these tests, it will be upheld as having a rational and lawful basis. *Hayes v. Department of the Navy*, 727 F.2d 1535 (Fed.Cir.1984).

We are satisfied, upon a careful review of the record, the arguments of the parties, and relevant statutes, regulations, and case law, that there is no legal basis for reversal.

AFFIRMED.