67 F.3d 319
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Gwenan P. BROWN, Petitioner,
v.
DEPARTMENT OF DEFENSE, Respondent.
 No. 95-3188.
 United States Court of Appeals, Federal Circuit.
 Oct. 6, 1995.
 
 Before NEWMAN, RADER, and BRYSON, Circuit Judges.
 PER CURIAM.
 
 DECISION
 
 1
 Gwenan P. Brown petitions for review of a December 5, 1994, decision of the Merit Systems Protection Board, Docket No. AT-0752-94-0009-I-1, in which the Board reversed in part the initial decision of the Administrative Judge. We affirm.
 
 BACKGROUND
 
 2
 Until 1993, Brown was employed as a Property Branch Supervisor, WG-10, with the Warner Robins, Georgia, office of the Defense Reutilization and Marketing Service (DRMS), an office within the Department of Defense. The DRMS is charged with the responsibility of accounting for and disposing of Department of Defense surplus property.
 
 
 3
 When property arrives at a DRMS office, it is either sent directly to the scrap yard or warehoused until it can be screened to determine if it can be reused by the Department of Defense, transferred to another federal agency, donated to an eligible state or private entity, or sold to the public. The location where the property is placed for screening is noted on a designated form. The information on the form is then entered into the agency's computer system, which tracks the location and status of the property throughout the disposal process.
 
 
 4
 If a particular item is not sold, the computer generates a "downgrade certificate" for that item. If, after the screening process, an item is judged unsuitable for reuse, transfer, donation, or sale, the office may downgrade the screened item to scrap. To effect the downgrading, an employee takes the downgrade certificate to the location where the item has been stored for screening, matches the information on the item and on the certificate, determines the item's scrap classification, and enters the scrap classification on the certificate; the employee must also sign and date the certificate, thus representing that he or she has followed these procedures. The screened item is then taken to a scrap storage area designated for its particular scrap classification, and the information on the certificate is entered into the computer.
 
 
 5
 Because Brown's office encountered a shortage of storage space and a severe backlog of surplus property in late 1992, the office bypassed the screening storage of many items and instead moved them directly to the scrap storage area. Although that procedure eliminated the need to move each item twice, it created a documentation problem, because the computer required a "screening storage location" for every item. Thus, "bogus" screening locations were entered. In addition, because the items were never moved to a screening location, it was difficult to locate each item and to obtain the required information about the item. In a number of instances, rather than tracking each item down to obtain accurate information, Brown simply signed the name of one of her subordinates on the downgrade certificate, as if the employee had actually completed the required procedures for downgrading the item. Brown later admitted signing the names of her subordinates to downgrade certificates on more than 100 occasions.
 
 
 6
 Surplus property that has military applications and that is to be reused, transferred, donated, or sold to parties outside the Department of Defense must undergo an additional step, referred to as demilitarization, to ensure that the public and national security are not harmed. In demilitarization, a certifier moves the item from its screening location and takes the necessary steps to render the item incapable of performing its intended military function. A verifier must witness the process to ensure that the procedures are followed, and both the certifier and verifier must contemporaneously sign a demilitarization certificate. Brown subsequently admitted that she often signed the verification portion of the demilitarization certificates before the items were actually demilitarized.
 
 
 7
 Following an investigation of Brown's conduct, the agency suspended her for 30 days and demoted her to the position of Material Examiner and Identifier, WG-5, Step 5. The action was based on three charges: (1) forging and falsifying material facts with respect to official documents; (2) requesting employees under her supervision to falsify official government documents; and (3) willfully disregarding agency regulations and directives.
 
 
 8
 Brown appealed to the Merit Systems Protection Board. In an initial decision, the Administrative Judge ruled in Brown's favor and reversed the sanctions imposed by the agency. The Administrative Judge found that Brown did not act with the intent required for a charge of forgery and falsification of government documents; he found that the testimony before him did not support the charge that she had requested her subordinates to falsify documents; and he found that the agency's Code of Conduct had not been entered into the record and that there was therefore no foundation for the charge of disregarding regulations.
 
 
 9
 The agency petitioned the full Merit Systems Protection Board for review of the initial decision. The Board upheld the Administrative Judge's dismissal of the second charge, but reversed the dismissal of the first and third charges. As to the first charge, the Board found that the evidence established that Brown intended to deceive or mislead the agency by signing her subordinates' names to the downgrade certificates. As to the third charge, the Board found that the Code of Conduct regulations were in the record and that Brown had violated the regulations by falsifying the downgrade and demilitarization certificates. Although the Board rejected Brown's claim of disparate treatment, it reduced her penalty by vacating the 30-day suspension.
 
 DISCUSSION
 
 10
 Brown argues that the agency failed to establish that she falsified government documents with the intent to defraud, deceive, or mislead the agency. She argues that although she falsified the downgrade certificates by signing her subordinates' names to them, the agency failed to establish that she acted with intent to mislead. Because there is rarely direct evidence of such intent, the Board usually must rely on circumstantial evidence to infer intent. Naekel v. Department of the Treasury, 782 F.2d 975, 978 (Fed.Cir.1986).
 
 
 11
 The Board found that Brown intended to mislead the agency because she acted in order to lead the agency to believe that a particular individual had completed the required procedures and was thus responsible for the item's whereabouts. The Board also found that by signing her subordinates' names Brown effectively certified that the employees had completed a required step in the procedures for disposing of government property, thereby indicating that she had discharged her duties when in fact she had not. Brown's actions with respect to the demilitarization certificates also constituted representations that procedures had been followed when they had not. In light of the apparent purpose and effect of the falsifications, we conclude that the Board's finding that Brown acted with intent to mislead or deceive the agency is supported by substantial evidence.
 
 
 12
 Brown next argues that the agency's Code of Conduct is too general to form a valid basis for the charge against her of disregarding regulations, and that the agency had never narrowed the scope of that charge by identifying the particular regulations that Brown was alleged to have disregarded. The Notice of Proposed Removal, however, specifically identified a number of provisions of the agency's Standards of Conduct that Brown was alleged to have violated, including a provision concerning making false statements in a government matter and taking action in violation of applicable directives or instructions. The Board did not commit legal error in concluding that Brown's conduct violated those regulations; we therefore cannot overturn the Board's decision on that charge.
 
 
 13
 The Board also did not commit reversible error in rejecting Brown's claim that the sanction imposed for her conduct was disproportionate to the sanction imposed for similar conduct on a similarly situated individual in another DRMS office. Her evidence before the Board did not establish that the individual to whom she referred had engaged in equivalent misconduct. In any event, Merit Systems Protection Board precedents establish that while the sanctions imposed on others for similar conduct are relevant to the issue of disproportionate penalty, an allegation that some other individual has received more lenient treatment for similar conduct is not enough to require mitigation if the penalty imposed in the instant case is appropriate to the offense. The Board held the penalty of demotion appropriate here, and that determination is not so clearly wrong as to justify reversal by this court.
 
 
 14
 Finally, the Board did not exceed its authority by rejecting the findings of the Administrative Judge. Contrary to Brown's argument, the full Board, as the ultimate decisionmaker in MSPB proceedings, is free to substitute its judgment for that of an Administrative Judge, who is simply assigned by the Board to conduct a hearing and make an initial decision in each case. See Connolly v. Department of Justice, 766 F.2d 507, 512 (Fed.Cir.1985). Our task in reviewing the Board's findings is to determine if those findings are supported by substantial evidence, not to determine whether the Board should have deferred to the findings made by the Administrative Judge.